UNITED MISSOURI RIVER POWER CO., APPELLANT, *v.* WISCONSIN BRIDGE & IRON CO., RESPONDENT.

(No. 3,046.)

(Submitted December 14, 1911. Decided December 23, 1911.)

[119 Pac. 796.]

*Foreign Corporations—Agents—Revocation of Authority.*

1. Laws of 1901, page 150, section 1, requires every foreign corporation to file a certificate that it has consented to be sued in the courts of this state upon all causes of action against it arising herein, and that service of process may be made upon some person whose name and residence is designated in such certificate, and provides that such service upon the agent shall be valid on the corporation; and section 2 requires the designation of an agent for service of process to remain in force until the filing in the same office of a written revocation thereof. *Held* that a foreign corporation may revoke the authority of its statutory agent to receive service, even after a cause of action has accrued against it.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

Action by the United Missouri River Power Company against the Wisconsin Bridge & Iron Company. From an order quashing a service of summons, plaintiff appeals. Affirmed.

*Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F. Gaines,* for Appellant, submitted a brief; *Mr. Brown* argued the cause orally.

While it has not been difficult to find decisions of the court's holding to the reasoning we contend for here—*viz.,* construction making the statute operative and preventing advantage being taken by one's own wrong—it has been difficult to find cases pat upon the facts. The question here is: Can a foreign corporation withdraw its agency to prevent service upon it of process upon an existing liability? A great many of the states provide that the agent thus designated shall continue as such until his successor is appointed or as to all existing liabilities. Such statutes have universally been held to make the service good even though the company has ceased carrying on its business in the state (*Phelps* v. *Mutual etc. Co.,* 112 Fed. 453, 50 C. C. A. 339; affirmed in 190 U. S. 147, 23 Sup. Ct. 707; *Birch* v. *Insurance Co.,* 181 N. Y. 583, 74 N. E. 1115; affirmed in 200 U. S. 612, 26 Sup. Ct. 752, 50 L. Ed. 620; *Home Ben. etc. Co.* v. *Muehl,* 109 Ky. 479, 59 S. W. 520; *Biggs* v. *Insurance Co.,* 128 N. C. 5, 37 S. E. 955; *Green* v. *Equitable etc. Co.,* 105 Iowa, 628, 75 N. W. 635); and even though its withdrawal from the state was involuntary. (*Germania Co.* v. *Ashby,* 112 Ky. 303, 99 Am. St. Rep. 295, 65 S. W. 611; *Phelps* v. *Insurance Co., supra; Woodward* v. *Insurance Co.,* 178 N. Y. 485, 102 Am. St. Rep. 519, 71 N. E. 10.) As has been well said by Judge Dietrich in *Hill* v. *Empire etc. Co.,* 156 Fed. 797: "The tendency, however, has been and is to provide such laws as will make it possible to compel a foreign corporation, when sued, to litigate in the courts of the state where it transacts or has transacted business, all controversies growing out of such business." (See, also, *Moore* v. *Mutual Assn.,* 129 N. C. 31, 39 S. E. 637; *D'Arcy* v. *Connecticut Insurance Co.,* 106 Tenn. 567, 69 S. W. 768.)

It has been difficult to find cases pat upon the facts.   However, one state has passed upon these identical facts, and held that a foreign company could not withdraw its agent's authority and thus frustrate a suit.   (*Michael* v. *Nashville etc. Insurance Co.,* 10 La. Ann. 737.)   While there is one decision to the contrary (*Forrest* v. *Pittsburgh Bridge Co.,* 116 Fed. 357, 53 C. C. A. 577), it is a simple statement without citation of authority or good reasoning given therefor.

It has also been expressly held that when there has been a secret revocation (under a statute like our own) in order to avoid service—a service upon the agent who has continued to act is good.   (*Capen* v. *Insurance Co.,* 25 N. J. L. 67, 64 Am. Dec. 412.)   The supreme court of California was sustained by the supreme court of the United States, in holding good a service ordered made upon an attorney for a corporation where the officers of the corporation had revoked an agency and kept his successor concealed so service could not be had.   (*Eureka etc. Co.* v. *Supreme Court,* 116 U. S. 410, 6 Sup. Ct. 429, 29 L. Ed. 671.)

The construction which respondent seeks to have put upon the statute would not only make the statute inoperative but the same logic would allow a company to evade the jurisdiction of the foreign state courts, by its own wrong.· That this cannot be done, see *Old Wayne etc. Co.* v. *Flynn* (Ind. App.), 66 N. E. 57; *Foster* v. *Betcher Lumber Co.,* 5 S. D. 57, 49 Am. St. Rep. 859, 58 N. W. 9, 23 L. R. A. 490; *Sparks* v. *Insurance Co.,* 73 Fed. 277; *St. Clair* v. *Cox,* 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222.   "A construction of a statute producing absurdities or consequences in direct violation of its own provisions is to be avoided."   (*Huidekoper* v. *Douglass,* 3 Cranch (U. S.), 1, 2 L. Ed. 347.)   All authorities hold that the courts should avoid a construction which would render the statute ineffective or inefficient, or which would cause great public injury or even inconvenience, if another or more reasonable interpretation is present in the statute.   (*Bird* v. *United States,* 187 U. S. 118, 23 Sup. Ct. 42, 47 L. Ed. 100; *Heydenfeldt* v. *Daney etc. Co.,* 93·U. S. 634, 23 L. Ed. 995, 13 Morr. Min. Rep. 204.)

In behalf of Respondent, there was a brief by *Messrs. Walsh & Nolan,* and oral argument by *Mr. T. J. Walsh.*

It is contended that to give the statute the construction which its language plainly carries, namely, that all authority in the agent is gone the moment the resignation is filed, would result in a hardship and enable the corporation withdrawing to perpetrate an injustice, if not a wrong, by canceling the agency after incurring a liability within the state. But even such considerations do not warrant the court in reading into this statute words substantially like those in brackets below, so that it shall, in effect, provide that the authorization conferred "shall remain in force until the filing in the same offices of a written revocation thereof, executed in like manner [provided that as to causes of action arising out of contracts theretofore entered into or liabilities incurred within this state, the designation shall remain in force until a new appointment is made, as herein provided]," or indeed to add to the statute any words whatever. (See *St. Louis etc. Ry. Co.* v. *Taylor,* 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061.)

There is no force to the suggestion that the entire purpose of the Act would be subverted unless the construction contended for by the appellant is given it. So long as the corporation continues to do business legally within the state, it is amenable to suit therein. The only way it can escape the liability to respond in the courts of the state is by utterly quitting the field.

The fact, adverted to in the brief of appellant, that a number of states have expressly provided that the revocation of the authority of the agent shall be ineffective as against existing liabilities until a successor is duly appointed, seems to afford conclusive evidence that in the judgment of the legislatures of those states, a law such as ours would afford total immunity upon the filing of the revocation. The state of New Jersey apparently recognized the soundness of the view adopted by the lower court in this case and enacted a statute containing express provisions such as the appellant seeks to have the court interpolate here. (*Groel* v. *United Electric Co.,* 69 N. J. Eq. 397, 60 Atl.

822.)   So likewise the state of Minnesota (*Magoffin* v. *M. R. Co.*, 87 Minn. 260, 94 Am. St. Rep. 699, 91 N. W. 1115), and North Carolina (*Woodward* v. *M. R. Co.*, 178 N. Y. 487, 102 Am. St. Rep. 519, 71 N. E. 10), Massachusetts (*Youmans* v. *Minn. T. I. & T. Co.*, 67 Fed. 282), Maryland (*Boggs* v. *Inter. Am. M. & S. Co.*, 105 Md. 371, 66 Atl. 259), Wisconsin (*Paulus* v. *Hart-Parr Co.*, 136 Wis. 601, 118 N. W. 248), Iowa (*Green* v. *E. M. L. Assn.*, 105 Iowa, 628, 75 N. W. 635), and Arkansas (*Collier* v. *Mutual Reserve Co.*, 119 Fed. 617).   The fact that all of the states referred to expressly provided by their statutes that the agency created under them should remain irrevocable as to subsisting liabilities, clearly discloses a common understanding that in the absence of express language to that effect in the law, a revocation would operate as a complete extinction of the authority of the former agent to represent his principal for the purpose of service of process.   (See *Forrest* v. *Pittsburgh Bridge Co.*, 116 Fed. 357, 53 C. C. A. 577; *Lathrop-Shea etc. Co.* v. *Interior C. & I. Co.*, 150 Fed. 666.)   The judgment in the last case above was reversed by the supreme court of the United States (215 U. S. 246, 30 Sup. Ct. 76, 54 L. Ed. 177), but without passing upon the question disposed of by the language quoted.

MR. JUSTICE SMITH delivered the opinion of the court.

In September, 1905, the defendant, a Wisconsin corporation, entered into a contract with the predecessor in interest of the plaintiff, a New Jersey corporation, for the construction of the steelwork and superstructure of a dam across the Missouri river at Hauserlake, Montana.   On April 14, 1908, the dam broke and gave way.   On February 23, 1894, the defendant appointed T. H. Kleinschmidt as its statutory agent for the service of process in Montana.   This appointment ostensibly continued in force until April 21, 1908, when a certificate of revocation thereof was filed in the office of the secretary of state and a duplicate certificate in the office of the county clerk and recorder of Lewis and Clark county.   On April 13, 1910, plaintiff began this action to recover the sum of $3,590,246.28 damages alleged to have

been sustained by reason of the breaking of the dam. Service of summons was made on Kleinschmidt. The district court of Lewis and Clark county, upon proof being made by affidavit of the revocation of Kleinschmidt's appointment as agent, as aforesaid, and also of the fact that since the completion of work under the contract the defendant has done no business in the state, entered an order quashing the service of summons. From that order plaintiff has appealed.

Quoting from the brief of counsel for the appellant: "The question presented by this appeal is the force of sections 1 and 2 of Senate Bill 46, Laws 1901, page 151." Section 1 of the Act of 1901, *supra*, reads, in part, as follows: "Such (foreign) corporation * * * shall * * * also file, * * * a certificate * * * that said corporation has consented to be sued in the courts of this state, upon all causes of action arising against it in this state, and that service of process may be made upon some person * * * whose name and place of business shall be designated in such certificate. And such service, when so made upon such agent shall be valid service on the corporation. * * * " Section 2 of the Act is now section 4414. Revised Codes, and reads, in part, as follows: " * * * Such designation shall remain in force until the filing in the same offices of a written revocation thereof. * * * "

It is argued in behalf of the appellant that if a foreign corporation, after liability incurred, may revoke the authority of its agent to receive service of process, before an action can be commenced, and the injured party thereby "forced, at great expense, to go to some other state and possibly to an unfriendly community to litigate a claim which arose in his own state and out of business done under rights acquired under his own state's statutes, the statute is inoperative and of no effect, and such a construction would be contrary to the rule which requires that statutes shall be so construed as to make them operative and effective if possible." It is also contended that the intent of the legislature that there shall be some person upon whom service of process may be had in suits concerning the corporation's business and transactions in this state is clear. A very elaborate

and exhaustive brief has been filed in support of the rules of statutory construction for which counsel contend, but the entire argument is based upon the premise that the statute is uncertain and ambiguous in its terms and therefore the subject of construction by the courts.

We think the law in question is plain, certain, and unambiguous. Such a statute requires no interpretation beyond the bare reading of the words of the law-making body. (*Osterholm* v. *Boston etc. Min. Co.*, 40 Mont. 508, 107 Pac. 499.) The legislature is presumed to have meant precisely what the words employed commonly import; that is, that the authority of a [1] statutory agent to receive service of process may be recalled and revoked, and after such revocation the agency no longer exists. The question of the wisdom of such legislation is not for the courts to determine.

But we are not without other light to guide us in determining the legislative intention. The legislature of 1893 (see Session Laws of 1893, p. 91) passed an Act providing: "Before any foreign corporation shall begin to carry on business in this state, it shall, by its certificate  *  *  *  designate an agent  *  *  * upon whom service of summons and other process may be made.  *  *  *  Service upon such agent shall be sufficient to give jurisdiction over such corporation to any of the courts of this state." The Act repealed, in terms, Chapter 24, Fifth Div., of the Compiled Statutes of 1887, which provided (section 443): "Such designation shall remain in full force until the filing in the same offices of a written revocation thereof.  *  *  *  "  The same legislative assembly (see Laws of 1893, p. 93) passed an Act to provide for the incorporation of companies to do the business of accident insurance on the assessment plan, in which it was expressly provided (see section 10) that the appointment of an attorney upon whom all process might be served should be accompanied by a written agreement "that the authority shall continue in force so long as any liability remains outstanding against the corporation in this state." It is readily seen, therefore, that when the law-makers intended to embody in a measure such terms as we are asked to read into section 2 of Senate Bill

46 (1901), *supra,* they found apt words to express such intention.

Counsel have not raised the question whether the order of the district court is one from which an appeal will lie, and we have, therefore, not considered the question.

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

